(97 South. 741)

**DEAN v. COUNTY BOARD OF EDUCATION. (6 Div. 778.)**

(Supreme Court of Alabama. Oct. 18, 1923.)

1. Schools and school districts ⬡48(6)— County board of education is a quasi corporation with power to acquire and hold real property for school purposes.

Under Acts 1919, p. 588, § 26, the county board of education is a quasi corporation with power to acquire and hold real property for school purposes by purchase, contract, condemnation, etc.

2. Eminent domain ⬡198(1)—Necessity of condemnation a matter for the determination of the board of education.

The necessity of acquiring real property for school purposes by condemnation, under Acts 1919, p. 588, § 26, is a matter for the determination of the board of education rather than by trial of the fact on hearing of the petition for condemnation.

3. **Eminent domain ⬳198(1)—Petition prosecuted to judgment held to show determination of necessity for taking property.**

An averment in a petition for condemnation that a board of education was desirous of rebuilding a school building to make it adequate, and for that purpose it was necessary to secure the land of the defendant, and the prosecution of the petition to judgment by the board, *held* to show sufficiently that the board had determined the necessity for taking the property.

4. **Eminent domain ⬳198(1)—Necessity for the land determined by the court as a legal question and does not enter into evidence.**

Under School Code, § 26, in a proceeding for condemnation the necessity for the land does not enter into the evidence, but is determined by the court as a legal question on the right of condemnation presented by the pleadings.

5. **Eminent domain ⬳4—Eminent domain an attribute of sovereignty, and the Legislature may prescribe who may exercise its power.**

As the right of eminent domain is an attribute of sovereignty inherent in the state, the Legislature may prescribe who may exercise the power.

6. **Eminent domain ⬳7—Right to exercise eminent domain must be conferred by statute either expressly or by implication.**

As the right of eminent domain lies dormant in the state until the Legislature points out the manner of its exercise, the right must be conferred by statute either by express words or necessary implication.

7. **Eminent domain ⬳8—Statute authorizing condemnation by board of education aided by constitutional and statutory provisions prescribing procedure and conditions precedent.**

Acts 1919, p. 588, § 26, authorizing the board of education to institute condemnation proceedings, being enacted with a full knowledge of the constitutional requirements and statutory provisions for the exercise of the right of eminent domain and payment of compensation, are to be referred to and aided by the law then of force and thereafter enacted providing the procedure and conditions precedent for condemnation.

8. **Eminent domain ⬳131—Test of market value of condemned property is what it would have sold for in the market.**

In condemnation proceedings, the test of the market value of the condemned property is what it would have reasonably sold for in the market at the time and place under like conditions.

9. **Evidence ⬳568(4)—Evidence of the value of condemned property not conclusive even when undisputed.**

Under Code 1907, § 3960, evidence of the value of property taken in condemnation proceedings is opinion evidence only, and is not conclusive even when undisputed.

10. **Evidence ⬳502 — Cross-examination of owner of condemned property held proper.**

Where the owner of condemned property fixed its market value, cross-examination as to the value of other property in the community and the price asked by the witness from defendant's representative, and also before the commissioners, and as to location and fitness of the lot, was proper.

11. **Evidence ⬳502 — Cross-examination as to valuation for taxation purposes of condemned property held proper.**

Where the owner of condemned property fixed its value, cross-examination to show that he valued it at much less for taxation purposes was proper, not for the purpose of showing the value of the land, but as an admission against interest, testing his credibility, judgment of value, and memory.

12. **Evidence ⬳113(19) — Refusal to charge that assessment sheets were not proof of value held error.**

In a proceeding to condemn land the refusal to charge that tax assessment sheets introduced in evidence had no legal tendency to prove the value *held* error.

13. **Evidence ⬳502 — Witness permitted to give basis of opinion for value of condemned property.**

Where an owner of condemned property was cross-examined to show that he stated before a commission appointed by the probate court that the lot condemned was worth more than he was claiming in the circuit court, without confining the evidence to the question of credibility, he should have been allowed on redirect examination to give as the basis of that opinion of value that he had been offered such amount.

14. **Evidence ⬳113(16)—Proof of offers or prospective buyer for land is not the proper way to show the reasonable market value.**

Proof that the owner of condemned property had an offer of $1,500, or a customer willing to pay that price, is not the proper way to show the reasonable market value of the land.

15. **Evidence ⬳113(16)—Evidence as to the amount offered owner by petitioner for property condemned inadmissible.**

Evidence as to the amount petitioner offered defendant for property condemned should have been excluded as an opinion of the petitioner as to value, and not evidence of the actual value of the land.

16. **Eminent domain ⬳131—Owner of a condemned lot entitled to receive real value of lot in relation to other lots.**

An owner of a lot taken in condemnation proceedings is entitled to receive the real value of the lot to the owner as it is actually situated where a lot across the road receives water from the lot condemned, the two lots being legally related, each enhancing the value of the other.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Proceeding begun in the probate court by the County Board of Education of Jefferson County, to condemn certain lands of E. E. Dean. From a judgment of condemnation

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in the circuit court, to which Dean appealed, respondent now appeals. Reversed and remanded.

These charges were requested by and refused to respondent:

"A. The court charges the jury that the owner of the land sought to be condemned in this proceeding is entitled to receive the real value of the land to the owner as it is actually situated and not merely its value regarding it as a separate and independent piece of land."

"F. The court charges the jury that the tax assessment sheets introduced in evidence have no legal tendency to prove the value of the property involved in this proceeding."

Horace C. Wilkinson, of Birmingham, for appellant.

The board of education is authorized to acquire property by condemnation only when the property is necessary for school purposes, and when the board is unable to acquire it any other way. Section 26, p. 588, Acts 1919, is unconstitutional, null, and void. City of Tacoma v. State, 4 Wash. 64, 29 Pac. 847; Eppley v. Bryson City, 157 N. C. 487, 73 S. E. 197; In re Willis Ave., 56 Mich. 244, 22 N. W. 871; Commissioners v. Bonner, 153 N. C. 66, 68 S. E. 970. The appellant was entitled to show the value of the land by a witness who was ready, willing, and able to buy it, even though such witness was not an expert as to value. Code 1907, § 3960. It was not permissible for the appellee to show the tax assessment on the property sought to be condemned. S. & C. Ry. Co. v. West End Land & Improvement Co., 137 N. C. 330, 49 S. E. 350, 68 L. R. A. 333, 107 Am. St. Rep. 490; Pratt Consolidated Coal Co. v. Norton, 68 South. 1015. Where tax assessment sheets are admitted for the purpose of contradicting a witness on the question of value, the jury should be instructed that the assessment fixed has no legal tendency to establish the true value of the property. Sou. Ry. v. Gray, 241 U. S. 333, 36 Sup. Ct. 558, 60 L. Ed. 1030; Jones v. State, 141 Ala. 55, 37 South. 390.

Huey & Welch, of Bessemer, for appellee.

The county board of education has authority to acquire land by condemnation, and the petition here was sufficient. Acts 1919, p. 588, § 26; Id. p. 890; Code 1907, § 3860; Allred v. Dunn (Ala. Sup.) 93 South. 390; Kimmons v. Board of Education, 204 Ala. 384, 85 South. 776; Town of Redmond v. Perrigo, 84 Wash. 407, 146 Pac. 838; State v. Superior, 44 Wash. 476, 87 Pac. 521; 20 C. J. 536; Sadler v. Langham, 34 Ala. 325; Lewis on Eminent Domain, 88; §§ 162, 240; L. & N. R. Co. v. Western Union Tel. Co., 195 Ala. 124, 71 South. 121, Ann. Cas. 1917B, 696. Tax sheets were admissible to discredit and contract the evidence of the plaintiff, and as independent evidence of the value of the land, he having taken a part in, and in

fact having named the assessed value. B. M. R. Co. v. Smith, 89 Ala. 305, 7 South. 634; Wilson Bros. v. M. & O. R. Co., 207 Ala. 171, 92 South. 246. There is nothing in the act justifying the contention that the duty is on the board to declare the necessity for the land by resolution or otherwise. Acts 1919, p. 588, § 26; Lewis on Eminent Domain, § 238; Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; Lowndes County v. Bowie, 34 Ala. 461; 10 R. C. L. 35, 183; Little v. State, 137 Ala. 640, 34 South. 620. The test of the value of the property in question was what it would have reasonably sold for on the market at the time involved. What a witness would give for the property is not the test. 13 Encyc. Ev. 451.

THOMAS, J. The county board of education of Jefferson county filed its petition (verified by the oath of one of its attorneys) in the probate court to condemn for school purposes the land specifically described.

Among other things, it is averred in that pleading: That petitioner is the duly and legally constituted board provided for in sections 1 to 29, inclusive, of the act of September 25, 1919, referred to as the School Code (Gen. Acts 1919, p. 567). That petitioner "has the general administration and supervision of the public schools; school buildings, and the educational interest of Jefferson county, Alabama, and has its legal residence in said county, and is discharging the duties, in said county, imposed on such board by said act." That "one of the public schools of Jefferson county, Alabama, is located in school district No. 14–A, in or at what is known as Hueytown. Your applicant owns the building and site of said school. That the attendance at said school has outgrown said site and building and it is now necessary to rebuild said building or to enlarge the same in excess of the land or ground now owned by applicant at said place. Applicant is now desirous of and proposes to rebuild or enlarge said school building and property so as to make the same in keeping with the needs and requirements of said school. To rebuild or enlarge the school buildings for said school so as to make them adequate for the needs of said school it is necessary to acquire additional land, additional ground or land being essential to the proper equipment of said school in keeping with the plans proposed therefor. The available and suitable land necessary to be added to the present site of said school in order to make it extensive enough to supply the needs of said school at the present time and for a reasonable time in the future is owned by the defendant, E. E. Dean. The said land so owned by said defendant. and hereinafter described, are [is] contiguous to the present site of said school and well located for such addition." That "on or about February 20, 1922," applicant took up "with

the said E. E. Dean the proposition of purchasing the land hereinafter described as an addition to said school site and tendered to him three hundred dollars in lawful money of the United States of America and a deed conveying said land by him to applicant, which said deed is hereto attached and marked Exhibit A and made a part hereof. Applicant avers that said land so described in said deed is essential to the proper equipment of said school, and that said three hundred dollars was at the time of said tender and now is a fair and reasonable market value of said land, which said lands are described * * *"; that "notwithstanding the fact that applicant tendered said Dean said money, which was an adequate sum for the purchase price of said land, and tendered him said deed for his execution, and requested him to execute said deed and deliver the same to applicant and accept said money, he did then and there and has continuously up to this time declined to accept the same and to execute said deed, giving as his reason for declining to accept said tender and execute said deed that the tract described in said deed and desired by applicant was only part of a larger tract owned by him at that place * * *"; and that "said land being contiguous to the present school site of said school now owned by applicant and being essential to the proper equipment of said school this applicant has the right under the law to come into this court and invoke its jurisdiction for the purpose of and to have said land described in paragraph four hereof duly and lawfully condemned as and for an addition to said school site of said school." The petition concludes with the usual prayer for process and condemnation "for the use and benefit of said school and district and that the title to said property may be vested in * * * applicant as the law requires," and with the general prayer.

Demurrer being decided against respondent-defendant, issue was joined on the motion to quash the petition and the general issue, and there was decree of condemnation of the lands described in the petition.

Appellant's counsel states his fundamental insistences as follows:

"Appellant contested the right of appellee to condemn this property on two theories: First, that there was nothing before the court to show that the appellee had ever determined that the property was necessary for school purposes; and, second, on the theory that the statute purporting to authorize a condemnation of the property is unconstitutional."

The unconstitutionality of the act is predicated upon the wording of the statute (Gen. Acts 1919, pp. 567, 588, § 26), as follows:

"The county board of education shall have the right to acquire, purchase by the institution of condemnation proceedings if necessary, lease, receive, hold, transmit and convey the title to real and personal property for school purposes, except where otherwise provided. It shall have the power to sue and contract, all contracts to be made after resolutions have been adopted by the board and spread upon its minutes. All processes shall be executed by service on the executive officer of the board."

It is insisted, of the power of eminent domain sought to be conferred and to be exercised, that it was not prescribed by the act for "the payment of compensation" for the land sought to be condemned.

[1] Pertinent provisions of section 26 of the act (Gen. Acts 1919, pp. 567, 588), as we interpret them, are that the county board of education is a quasi corporation (Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 387, 85 South. 774; Allred v. Dunn, 207 Ala. 469, 93 South. 390, 391; Board of Education of Escambia County v. Watts [Ala. App.] 95 South. 498 [1]) that is given the right and power to acquire and hold real property for school purposes, by purchase, by contract, by condemnation, by lease, etc.

[2, 3] The necessity for the acquiring by condemnation of real property for school purposes is a matter for the determination of the board of education rather than by the trial of the fact on the hearing of the petition for condemnation. We are of opinion that the averments of fact contained in the petition for condemnation, and the prosecution thereof to a judgment by the board, as petitioner, was a sufficient expression of the judgment of that board and corporation that the lands sought for school purposes were necessary to be obtained by its condemnation without other statement in the minutes of the board to that end.

[4-6] The term "necessary," as used in section 26 of the School Code, and that of "actual necessity," contained in section 3867 of the Code, are different. The term in the latter statute is where property already devoted to a public use is sought to be condemned, and has been the subject of recent discussions by this court not necessary to be considered in the case before us, since the lands sought to be condemned are not of that class. However, the latter section has reference to the need of the land, as distinguished from the need for condemnation to secure it. M. & G. R. Co. v. Ala. Mid. Ry. Co., 87 Ala. 501, 6 South. 404; M. & B. R. Co. v. L. & N. R. Co., 192 Ala. 136, 68 South. 905; L. & N. R. Co. v. W. U. T. Co., 195 Ala. 124, 71 South. 118, Ann. Cas. 1917B, 696; W. U. T. Co. v. L. & N. R. Co., 199 Ala. 441, 74 South. 946; Ala. Pub. Serv. Com. v. L. & N. R. Co., 206 Ala. 326, 89 South. 524. Under the School Code, § 26, the necessity for the land does not enter into the evidence, but is determined by the court, as a legal question, on the right of condemnation presented by the pleadings. London v.

[1] 19 Ala. App. 7.

Sample Lumber Co., 91 Ala. 606, 8 South. 281; M. & G. R. Co. v. Ala. Mid. Ry. Co., supra; Jones v. Jefferson County, 206 Ala. 13, 89 South, 174. The right of eminent domain is an "attribute of sovereignty inherent therein as a necessary and inseparable part thereof." Ala. Interstate Power Co. v. Mt. Vernon, etc., Co., 186 Ala. 622, 65 South. 287. And the Legislature may prescribe who may exercise the power of eminent domain. Sloss-Sheffield S. & I. Co. v. O'Rear, 200 Ala. 291, 76 South. 57. Inasmuch as the right lies dormant in the state until legislative action is had pointing out the occasion, mode, conditions, and agencies for its exercise, the right to exercise the power must be conferred by statute, either in express words or by necessary implication, and is not to be gathered from doubtful inferences. Ala. Interstate Power Co. v. Mt. Vernon, etc., Co., 186 Ala. 622, 65 South. 287. The public policy of the state in this regard has been declared by the Legislature within constitutional bounds. Const. § 235; State v. W. U. T. Co., 208 Ala. 228, 94 South. 466. The trial court was not in error in overruling demurrer to the petition, nor in that part of the oral charge to which exception was reserved, to wit:

"The court has determined from the petition and the evidence in the case that the plaintiff in this case has a legal right to condemn the property. And have a right to have the value of the property assessed."

[7] The provisions of section 26 (Gen. Acts 1919, p. 588), authorizing "the county board of education * * * to acquire, purchase by the institution of condemnation proceedings if necessary * * * the title to real" property, were enacted with a full knowledge of constitutional requirements and statutory provisions for the exercise of the right of eminent domain and the payment of compensation for the property so taken. The foregoing provisions for the exercise, by such quasi corporation, of the right of condemnation, to the end indicated by the Legislature, are to be referred to and aided by the law then of force and thereafter enacted, containing the procedure and conditions precedent to be complied with before such condemnation may be accomplished. The Constitution (§ 235) of the state and the statutes recognized and provided the procedure for condemnation, and in the exercise of this right petitioner had the right of reference thereto. Sloss-Sheffield S. & I. Co. v. O'Rear, 200 Ala. 291, 76 South. 57; Gen. Acts 1919, § 26, p. 588; Code 1907, § 3860 et seq., and the amendment thereof September 30, 1919 (Gen. Acts, p. 890); L. & N. R. Co. v. W. U. T. Co., 195 Ala. 124, 71 South. 118, Ann. Cas. 1917B, 696.

[8-10] The test of the market value of the property was what it would have reasonably sold for in the market at the time and place and under like conditions. 13 Encyc. of Ev.

449-451. It is also true that under the statute evidence of value is held to be opinion evidence (Code, § 3960) that is not conclusive on courts and juries trying the fact, even when the evidence is without conflict. Obear-Nester Glass Co. v. Mobile Drug Co., 208 Ala. 618, 95 South. 13; Andrews v. Frierson, 144 Ala. 470, 39 South. 512; Sellers v. Knight, 185 Ala. 96, 64 South. 329; United States v. Goodloe, 204 Ala. 484, 486, 86 South. 546. The respondent Dean, testifying, fixed the market value of his entire property, including that sought to be condemned, at $1,800, and the lot in question at $800.

[11] On his cross-examination he was asked as to the location and fitness of the lot for "a business site," and its proximity to school, church, and the public thoroughfare from Birmingham and other points in the county. The witness was further interrogated as to the sales of other property in that vicinity and the price theretofore fixed by him on his properties located in the place in question, and he testified that he had had a discussion with Prof. Hewitt (who, it appeared, was trying to buy this land from Dean for the board of education), and that he asked Hewitt "$2,000 for it"; that in condemnation proceedings before the commissioners appointed by the probate court he might have declared the value of the whole tract to be $1,800 to $2,000, and that this lot was worth $1,500. In this examination we find no error. The bill of exceptions then recites:

" 'Q. What do you assess this acre at, Mr. Dean? A. I never assessed it at all. It has been assessed by the appraiser, by the tax appraiser.' Whereupon this question was put to the witness: 'Q. You made an affidavit fixing the value on it, though, didn't you, on the whole tract, house and all?' The defendant objected to the question on the ground that it is irrelevant, incompetent, illegal, and immaterial testimony. The court overruled the objection, and the defendant then and there reserved an exception to the action and ruling of the court. The witness answered: 'Yes, sir.' Whereupon this question was put to the witness: 'I will ask you if it is not a fact that you assessed the entire tract, house and all, at $360, and swore to that assessment?' The defendant objected on the ground that it was irrelevant, incompetent, illegal, and immaterial testimony. The court overruled the objection and the defendant then and there reserved an exception to the action and ruling of the court, and the witness answered: 'I never made no affidavit to it.' "

In this there was a reasonable exercise of the right of cross-examination of the witness, not for the purpose of showing the value of the land, but as an admission against interest, testing his credibility, judgment of value, and his memory. Wilson Bros. v. M. & O. R. Co., 208 Ala. 581, 94 South. 721; S. A. & M. Ry. v. Buford, 106 Ala. 303, 17 South.

395; B. M. R. Co. v. Smith, 89 Ala. 305, 7 South. 634; Steed v. Knowles, 97 Ala. 573, 12 South. 75.

[12] There was error in refusing charge F, requested by appellant. 22 C. J. p. 305, § 343. See Jones v. State, 141 Ala. 55, 37 South. 390; Stone v. State, 208 Ala. 50, 51, 93 South. 706; Southern Ry. Co. v. Gray, 241 U. S. 333, 36 Sup. Ct. 558, 60 L. Ed. 1033.

[13, 14] At the conclusion of the cross-examination of the appellant, on redirect examination he was asked, "Mr. Dean, have you been offered over $1,500 for this piece of property out there?" and "Have you got a customer now that is ready, willing, and able to pay you or buy it for $1,500?" referring to the lot in question. This was responsive to that part of the cross-examination in which the witness had been asked if he did not say "before the commissioners appointed by the probate court * * * that this lot was worth $1,500." Having invoked the respondent to such evidence, without confining it to credibility, rather than leaving it to apply, as well, to the value of the lot, he should have been allowed to give the jury the basis of that opinion of value given by him before the commissioners appointed by the probate · court. Gibson v. Gaines, 198 Ala. 583, 73 South. 929; Bank of Phœnix City v. Taylor, 196 Ala. 665, 72 South. 264. However, this is not the way to show the reasonable market value of land. Enterprise Lumber Co. v. Porter & Newton, 155 Ala. 426, 46 South. 773; Town of Eutaw v. Botnick, 150 Ala. 429, 43 South. 739; Sharp v. United States, 191 U. S. 341, 24 Sup. Ct. 114, 48 L. Ed. 211, 213, 20 C. J. p. 985, § 388; 22 C. J. p. 179, § 123, p. 184, § 138; 13 Encyc. of Ev. 446 et seq.

[15, 16] The fact that Prof. Hewitt tendered $300 to Dean, as a sum thought by the board to be the reasonable purchase price of the land, was, in effect, saying to the jury, "This is the opinion of the petitioner as to value." This question, "I will ask you to state whether at that time or not you tendered Mr. Dean, the defendant in this case, $300 mentioned in the deed," (propounded to Prof. Hewitt), should have been excluded, on due motion of defendant; it being no evidence of the value of the land.

Defendant's refused charge A should have been given under the evidence. It is undisputed that defendant's lot across the road from that sought to be condemned obtained water, under the circumstances detailed in the evidence (drainage on the other lot from the cemetery), from the well on the lot sought to be condemned, the two lots being "legally related" and each enhancing the value of the other. Alabama Power Co. v. Carden, 189 Ala. 384, 387, 66 South. 596; L. D. Tel. & Tel. Co. v. Schmidt, 157 Ala. 391, 47 South. 731.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.