184 So.2d 341

**SOUTHERN RAILWAY COMPANY**

v.

**Ashford TODD, Judge of Probate.**

**8 Div. 219.**

Supreme Court of Alabama.

Feb. 10, 1966.

Rehearing Denied March 31, 1966.

Bell, Richardson, Cleary, McLain & Tucker, Huntsville, for appellant.

Chas. H. Younger, Huntsville, and Maurice F. Bishop, Birmingham, for appellee.

MERRILL, Justice.

This appeal is from a denial and dismissal by the circuit court of a petition for mandamus, in which appellant sought to have the Judge of the Probate Court of Madison County dismiss an amended petition of the City of Huntsville for condemnation of certain lands of appellant for the widening and straightening of a railroad crossing and one of its approaches.

The amended petition for condemnation by the City of Huntsville was heard before Hon. Ashford Todd, as Judge of Probate, and on October 17, 1963, the order of condemnation was granted. Before the appointment of commissioners or any other proceedings, this petition for mandamus was filed with the circuit court, alleging that the proposed street crossing would interfere materially with appellant's freight and switching yard and main tracks, and averring appellant's lack of an adequate remedy by appeal because the city could acquire a right of entry notwithstanding the appeal.

After a hearing of five days and the building of a transcript of 571 pages, the court entered a decree, the pertinent part of which reads:

"Come the parties and issue being joined between the Petitioner and Respondent said cause is submitted to the Court upon the pleadings, the oral testimony taken before the Court and the exhibits to such testimony. Upon consideration of same the Court is of the opinion that the evidence shows a public necessity for the widening of the present public grade crossing across the tracks of the Petitioner for public convenience and that the condemnation of the land sought to be acquired for widening of such right-of-way is actually necessary and will not materially interfere with the public use to which said property is already subjected. The Court is further of the opinion that the acquisition of the easement for the widening of the present public right-of-way now crossing the tracks of the Southern Railway Company is in the public interest and will substantially contribute to the orderly and safe movement of traffic and that Petitioner can still use its facilities after making certain modifications the expense of which will be a matter to be considered upon the awarding of damages and compensation to Petitioner.

"The Court is further of the opinion the prayer of the petition should be denied and the petition should be dismissed.

"It is therefore ordered and adjudged by the Court that the peremptory writ prayed for in the petition be and the same is denied and said petition is dismissed."

■ Mandamus is the proper method to review a ruling of the probate court when it has entered an order of condemnation. J. Blach & Sons v. Hawkins, 238 Ala. 172, 189 So. 726; Gerson v. Howard, 246 Ala. 567, 21 So.2d 693; Lybrand v. Forman, 259 Ala. 354, 67 So.2d 4.

Appellant argues assignments of error 2 through 6 in bulk since they are related. Assignment one is not argued.

The main argument of appellant is that it is protected by Tit. 19, § 9, Code 1940, which reads:

"If the property sought to be condemned, or any portion thereof, or interest therein, has already been subjected to or devoted to a public use, such land or portion thereof, or interest therein, shall not be taken for another and different character of public use unless an actual necessity for the specific land or portion thereof or interest therein shall be alleged and proven, and unless it be alleged and proven that such other and different character of public use will not materially interfere with the public use to which such property is already subjected or devoted."

It is agreed that the subject property was devoted to a prior use by appellant; and appellant contends that the evidence does not support a finding that the use by the city would not materially interfere with the public use to which the property was already subjected by appellant.

There are three main streets leading from downtown Huntsville to residential and business areas to the north—Church, Washington and Meridian—and all cross appellant's tracks at grade. Seven tracks cross Church Street and eight cross Washington, the street and crossing involved in the instant case.

For more than one hundred years, there has been a public grade crossing over appellant's tracks at Washington Street. That part of Washington south of the tracks has a 66 foot right of way with 40 foot paving. That part north of the tracks has an 80 foot right of way with 48 foot paving. Presently, paving over appellant's tracks at Washington is 22 feet wide with a 40 foot right of way. The street crosses all the eight tracks in a curve and it was characterized as a dangerous or hazardous crossing that was "blind" or had poor visibility. The proposed crossing would straighten the curve, improve the visibility, increase the right of way over the crossing to 66 feet and the pavement to 40 feet. The new right of way would extend the crossing to the west and the right of way area sought to be acquired varies in width from zero to 59 feet, generally averaging approximately 26 feet. This extension would have the effect of lessening the number of cars that could be handled or set on appellant's switching and side tracks, because the present crossing and the proposed widening crosses at the throat of the switching and side tracks.

A municipality has the right to acquire rights of way and easements for public street and highway purposes. Tit. 37, § 507; Tit. 12, § 197; Tit. 23, § 25, as amended; Tit. 19, § 1, Code 1940.

■ Title 19, § 9, quoted supra, does not prohibit a proper authority from securing a right of way or easement for a street or highway across a railroad when there is "an actual necessity for the specific land or portion thereof." Louisville & Nashville R. Co. v. Western Union Telegraph Co., 195 Ala. 124, 71 So. 118.

■ Reason and common sense also dictate such a conclusion. A public way, whether it be a highway, railroad or canal, cannot in the nature of things be constructed for any considerable distance through an inhabited country without crossing other public ways. Accordingly, general authority to lay out and construct public ways and to take necessary land justifies the condemnation of crossings over other public ways so far as it can be done without destroying the use of the original way, and subject to the condition that the power is to be exercised so as to interfere as little as possible with the original use. 1 Nichols on Eminent Domain, § 2.2 [1], p. 212. Were this not the rule, no railroad could cross an existing highway or street, and no highway could cross a railroad.

In Elberton Southern Ry. Co. v. State Highway Dept., 211 Ga. 838, 89 S.E.2d 645, the Supreme Court of Georgia held that:

"[T]he State, by and through the Highway Department, has the power and authority to condemn the property already devoted to a public use and appropriate it to another and different public use, by paying just compensation therefor, and the fact that the taking of the property sought to be condemned may put the railway company to additional expense in maintaining that part of its property which remains, and interfere with its use of mechanical equipment in the maintenance of its track and roadbed, are questions which relate to the value of the property taken, and the consequential damages to the remaining property, and not to the right to condemn."

To the same effect are 29A C.J.S. Eminent Domain § 78, p. 337, 18 Am.Jur., Eminent Domain, § 101, p. 727.

■ Here, the appellee is not seeking to open a new street or to make a completely new crossing, but seeks to widen, improve and make safer the existing one. It does not seek fee simple title to the crossing, but only to continue a common use of the crossing that has existed for over one hundred years.

The trial court found that the additional land was actually necessary, was in the public interest, would substantially contribute to the orderly and safe movement of traffic and would not materially interfere with the public use to which the property was already subjected.

Without detailing the evidence, we are, convinced that it supported the findings. of the trial court. In addition to the showing that the street was one of three streets capable of handling north-bound traffic from the downtown section of the city, there was evidence that the crossing would be made safer, that the change would lessen the time vehicular traffic was exposed to railroad traffic and vice versa, that the actual exposure distance to highway traffic would be slightly lessened, that appellant could continue to provide all the services over the tracks that they are providing today, and that the change could be made without great difficulty or expense.

As already noted, the matter of expense relates to the matter of compensation for damages, not to the right to acquire by condemnation.

We think the factual situation here clearly distinguishes this case from those cited by appellant.

No error to reverse has been argued.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.