THOMPSON, Presiding Judge.
Sima Properties, L.L.C. ("Sima"), appeals from two separate judgments entered by the Montgomery Circuit Court ("the trial court") dismissing Sima's inverse-condemnation action against John R. Cooper, in his official capacity as the director of the Alabama Department of Transportation ("ALDOT"), and the City of Prattville ("the city").
In its complaint, Sima alleged that it owns a gasoline station at the corner of Alabama Highway 14 and Old Farm Road within the geographical boundaries of the city. Sima averred that its customers had had access to the gasoline station from Highway 14 by the use of a driveway. However, in November 2014, Sima said, the driveway was closed when ALDOT and the city "altered the construction of Highway 14 by creating another road and an intersection in close proximity to [Sima's] access way onto said Highway 14 and closed [Sima's] direct access to Alabama Highway 14." Sima claimed that the construction project terminated what Sima said were its easement rights and its right of access. Sima also alleged that the value of its property was diminished and that its property had been taken without due process of law. It further asserted that Cooper and the city had acted fraudulently, in bad faith, beyond their respective authorities, or under a mistaken interpretation of *859 the law in exercising dominion over Sima's property rights. Sima sought compensation for the property it claimed it had lost, as well as litigation expenses, and an order requiring Cooper and the city to restore its direct access to Highway 14.
Cooper filed a motion to dismiss Sima's complaint pursuant to Rule 12(b)(1) and (6), Ala. R. Civ. P., on the grounds that he had sovereign immunity under Article I, § 14, Ala. Const. 1901, and that the complaint failed to state a claim upon which relief could be granted. The trial court would lack subject-matter jurisdiction over the claims asserted against Cooper if Cooper were found to have sovereign immunity. Ex parte Alabama Dep't of Transp., 978 So.2d 17, 26 (Ala. 2007). Cooper attached an affidavit and supporting exhibits to his motion to dismiss. The city also filed a motion to dismiss, arguing that Sima failed to state a claim upon which relief could be granted. Specifically, the city asserted that ALDOT owns the property at issue and that Sima has no right of ownership or possession to that property. In its motion, the city relied on the information stated in the affidavit and the exhibits attached to Cooper's motion. The city did not include an evidentiary submission of its own.
The affidavit Cooper submitted was that of Philip Shamburger, the acting bureau chief of ALDOT's right-of-way bureau. In that affidavit, Shamburger explained that, in his position, he was responsible for, among other things, oversight of ALDOT's right-of-way acquisition process and served as custodian of right-of-way records. Shamburger stated that in May 1970 ALDOT filed a condemnation petition in the Autauga Probate Court "for property owned by George L. Yarbrough and others to purchase real estate for 'public use as a right of way for the construction and maintenance of a public road' " as identified by a certain project number. After a hearing on the petition, the probate court entered an order condemning the property. That order was appealed to the circuit court. After a trial, Shamburger said, the circuit court entered a judgment of condemnation, which included the property at issue. Yarbrough and the others who owned the property were awarded $56,460.90 for the property. Shamburger attached the probate-court and circuit-court judgments as exhibits to his affidavit. He also attached a map, which he said was maintained in ALDOT's ordinary course of business, showing the property at issue. According to the map, Shamburger said, the property from the entrance of Sima's gasoline station to Highway 14 is owned by ALDOT for the purpose of providing a right-of-way for construction and maintenance of a public road.
Sima filed an opposition to both motions to dismiss. After a hearing on Cooper's and the city's motions, the trial court entered separate judgments dismissing Sima's claims. As to Cooper's motion, the trial court found that he was entitled to sovereign immunity both as to claims seeking damages and as to claims seeking injunctive relief. The trial court also found that Sima did not have an ownership interest in the property at issue and that, therefore, it could not bring a valid inverse-condemnation claim. As to the city's motion, the trial court relied on the evidentiary materials attached to Cooper's motion to find that ALDOT, and not Sima, owned the property at issue. The trial court determined that, because Sima's property was not taken, it could not prove a set of facts upon which relief could be granted. Accordingly, the trial court also dismissed Sima's claims against the city.
Sima filed a motion to alter, amend, or "revise" the judgments, pursuant to Rule 59, Ala. R. Civ. P. The trial court denied *860 the motion. Sima then appealed both judgments to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
On appeal, Sima contends that the trial court erred in dismissing its action against Cooper on the ground that Cooper was entitled to sovereign immunity. In its judgment in favor of Cooper, the trial court wrote:
"Sovereign immunity also bars Sima's action for damages against Cooper in his official capacity. Section 14 of the Alabama Constitution prohibits a damages award against a State official in his official capacity because a result favorable to Sima would directly affect the State treasury."
Under most circumstances, a state official sued in his or her official capacity is entitled to sovereign immunity under § 14 of the Alabama Constitution of 1901.
"This Court has long held that ' " 'the circuit court is without jurisdiction to entertain a suit against the State because of Sec. 14 of the Constitution.' " ' Larkins v. Department of Mental Health & Mental Retardation, 806 So.2d 358, 364 (Ala. 2001) (quoting Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 435 (Ala. 2001), quoting in turn Aland v. Graham, 287 Ala. 226, 229, 250 So.2d 677, 678 (1971) ). '[A]n action contrary to the State's immunity is an action over which the courts of this State lack subject-matter jurisdiction.' Larkins, 806 So.2d at 363."
Ex parte Alabama Dep't of Transp., 978 So.2d 17, 21 (Ala. 2007). However, there are exceptions to the State's sovereign immunity under § 14, one of which is a valid inverse-condemnation action brought against a state official in his or her representative capacity. Id. If the exception did not exist, an action against a governmental authority to recover the value of property that has been taken by that authority could never occur, because, based on sovereign immunity, the trial court would never obtain jurisdiction over an inverse-condemnation action. See Jefferson Cty. v. Southern Natural Gas Co., 621 So.2d 1282, 1287 (Ala. 1993). Therefore, we hold that the trial court erred in determining that Sima's action against Cooper was due to be dismissed on the basis of sovereign immunity.
Sima also asserts that the trial court erred in dismissing its inverse-condemnation action against both Cooper and the city on the ground that Sima did not have a property right in the access from Highway 14 to its gasoline station.
" 'A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993). This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala. 2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So.2d at 299.'
" Newman v. Savas, 878 So.2d 1147, 1148-49 (Ala. 2003)."
Double B Country Store, LLC v. Alabama Dep't of Transp., 171 So.3d 28, 31 (Ala. Civ. App. 2015).
Two sections of the Alabama Constitution of 1901-Article I, § 23, and Article XII, § 235 (which applies specifically to municipalities)-prohibit a governmental entity from taking private property for public use without just compensation. In Gober v. Stubbs, 682 So.2d 430, 433-34 (Ala. 1996), our supreme court discussed *861 the power of eminent domain and its limitations:
"The power of eminent domain does not originate in Article I, § 23. Instead, it is a power inherent in every sovereign state. Section 23 merely places certain limits on the exercise of the power of eminent domain. This Court stated in Steele v. County Commissioners, 83 Ala. 304, 305, 3 So. 761, 762 (1887) :
" 'The right of eminent domain antedates constitutions, and is an incident of sovereignty, inherent in, and belonging to every sovereign State. The only qualification of the [inherent] right is, that the use for which private property may be taken shall be public.... The constitution [of our State] did not assume to confer the power of eminent domain, but, recognizing its existence, [further] limited its exercise by requiring that just compensation shall be made.'
"In order for an exercise of eminent domain to be valid under § 23, two requirements must be met. See Johnston v. Alabama Public Service Commission, 287 Ala. 417, 419, 252 So.2d 75, 76 (1971). First, the property must be taken for a public use and, with one exception inapplicable here, it cannot be taken for the private use of individuals or corporations. This first restriction is no more than a restatement of a requirement inherent in a sovereign's very right to exercise eminent domain. See Steele, 83 Ala. at 305, 3 So. at 762. Second, 'just compensation [must be paid] for any private property taken.' Johnston, 287 Ala. at 419, 252 So.2d at 76."
(Footnotes omitted.)
Section 235 of the Alabama Constitution expands on a landowner's rights. That section provides that entities invested with the privilege of taking property for public use-including municipal authorities-"shall make just compensation ... for the property taken, injured, or destroyed by the construction or enlargement of [their] works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction." Ala. Const. 1901, Art. XII, § 235.
" Section 235 does not expressly discuss inverse condemnation; however, statutes and [our appellate courts'] caselaw have long recognized that, if an entity holding eminent-domain powers fails to make compensation before taking, injuring, or destroying private property, the aggrieved property owner is entitled to assert an inverse-condemnation claim against that municipal corporation. See Jefferson Cnty. v. Southern Natural Gas Co., 621 So.2d 1282, 1287 (Ala. 1993) (...) (' "Inverse condemnation" refers to a legal action against a governmental authority to recover the value of property that has been taken by that governmental authority without exercising its power of eminent domain-it is a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when the taking authority has not initiated condemnation proceedings.'), and § 18-1A-32, Ala. Code 1975 ('A condemnor shall not intentionally make it necessary for an owner of property to commence an action, including an action in inverse condemnation, to prove the fact of the taking of his property.'). Applying § 235, a plaintiff asserting an inverse-condemnation claim is required to put forth substantial evidence of the following elements: (1) that the defendant is an entity 'invested with the privilege of taking property for public use'; (2) that the plaintiff's property was 'taken, injured, or destroyed'; and (3) that that taking, injury, or destruction was caused 'by the *862 construction or enlargement of [the defendant's] works, highways, or improvements.' See, e.g., Mahan v. Holifield, 361 So.2d 1076, 1079 (Ala. 1978) ('[ Section 235 ] has been interpreted to support a cause of action by a private landowner whose property is taken or damaged by a municipality as a consequence of its acts of construction or enlargement.')."
Housing Auth. of the Birmingham Dist. v. Logan Props., Inc., 127 So.3d 1169, 1173-74 (Ala. 2012).
Cooper and the city contend that the dismissal of Sima's inverse-condemnation action was proper because, they say, Shamburger's affidavit and supporting exhibits demonstrate that Sima does not "own" or have a right to ownership of the property that was "taken" when ALDOT closed what Cooper and the city say was its "unauthorized access" to Highway 14. Therefore, they argue, Sima cannot meet one of the elements required to sustain an inverse-condemnation action, i.e., that its property was taken.
The bases for Sima's argument that it "owned" a right of access in the driveway leading from Highway 14 to the gasoline station are twofold: (1) Sima contends that the owner of land adjoining a highway has a property right in access to the highway, and (2) it contends that, because it had used that driveway for more than 20 years, it had acquired an ownership right by adverse possession.
As to its contention that it had a property right in access to Highway 14 because it was an adjoining landowner, Sima relies on Davis v. State, 346 So.2d 936 (Ala. 1977). In that case, our supreme court set forth the law regarding the right of a landowner to access a street or highway abutting his or her property:
" ' " 'The overwhelming weight of authority is that the owner of land abutting on a street or highway has a private right in such street or highway, distinct from that of the public, which cannot be taken or materially interfered with without just compensation. Access to the highway is one of these private rights and is a property right, and the interference with the right of access of an abutting owner is an element of damage.' " ' "
346 So.2d at 939 (quoting St. Clair Cty. v. Bukacek, 272 Ala. 323, 328, 131 So.2d 683, 687 (1961), quoting in turn Blount Cty. v. McPherson, 268 Ala. 133, 135, 105 So.2d 117, 119 (1958) ).
In Housing Authority of the Birmingham District v. Logan Properties, Inc., 127 So.3d at 1177, our supreme court reiterated the rule announced in Alabama Power Co. v. City of Guntersville, 235 Ala. 136, 143-44, 177 So. 332, 339 (1937) :
" 'We think the proper rule, deducible from the foregoing authorities, is, that just compensation must be made by municipal corporations and other corporations and individuals invested with the privilege of taking property for public use, when, by the construction or enlargement of "its" works, highways, or improvement, there will be occasioned some direct physical disturbance of a right, either public or private, which the owner enjoys in connection with his property, and which gives it an additional value, and that by reason of such disturbance he has sustained some special damage with respect to his property in excess of that sustained by the general public.' "
(Emphasis added in Logan Properties.)
We conclude that, under the law set forth in Davis and Logan Properties, Sima has asserted a valid inverse-condemnation action against Cooper and the city. Sima has alleged that Cooper, through ALDOT, and the city have interfered with its right of access from the gasoline station to *863 Highway 14, which it obtained by virtue of its being an abutting landowner. If the allegations are proven, Sima's inverse-condemnation claim could be compensable.[1] In reaching this holding, we are not concluding that Sima will ultimately prevail in its inverse-condemnation action; we hold only that it could possibly prevail.
As to Sima's second contention-that it obtained a property right in the driveway or its access from the gasoline station to Highway 14 through adverse possession-" '[t]here is abundant authority in this State for the proposition of law that title cannot be acquired by adverse possession of land owned by the State or a county.' State ex rel. Attorney General v. Tarleton, 279 Ala. 555, 188 So.2d 516 (1966) ; Nixon v. City of Anniston, 219 Ala. 219, 121 So. 514 (1929) ; Jefferson County v. McClinton, 292 Ala. 285, 293 So.2d 294 (1974)." Taylor v. Martin, 585 So.2d 849, 852 (Ala. 1991). Therefore, we find no merit to Sima's argument that it had a property right in the driveway through adverse possession.
For the reasons set forth above, the judgments dismissing Sima's inverse-condemnation action are reversed and the cause is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
Pittman, Thomas, and Moore, JJ., concur.
Donaldson, J., concurs in the result, without writing.

We note that any argument by Cooper and the city that Sima has access to its property by means other than the driveway at issue requires a factual determination that could be based only on matters outside of the pleadings. It is well settled that,
"[i]f, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, [Ala. R. Civ. P.,] and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
Rule 12(b), Ala. R. Civ. P.
In Singleton v. Alabama Department of Corrections, 819 So.2d 596, 599-600 (Ala. 2001), our supreme court held that if a motion under Rule 12(b)(6) is required to be converted into a motion for a summary judgment based on the consideration of matters outside the pleadings, the parties are entitled to notice that the motion to dismiss has been converted to a motion for a summary judgment and to an opportunity to present evidence in opposition to the motion. The record in this case indicates that such a procedure was not followed.